ARMFIELD, (BRENT v.) See Case No.
1,833.

## Case No. 536.

ARMIJO v. UNITED STATES.

[Hoff. Land Cas. 248.] [1]

District Court, D. California. June Term,
1857. [2]

MEXICAN LAND GRANTS—BOUNDARIES—SPECIFIC
QUANTITY FROM LARGER TRACT.

This claim is entitled to confirmation under
the rulings of the supreme court in Fremont's
Case, [17 How. (58 U. S.) 542.]

[See note at end of case.]

Claim [by the heirs of Jose F. Armijo] for
three leagues of land in Solano county, re-
jected by the board, and appealed by the
claimants.

Jeremiah Clarke, for appellants.
P. Della Torre, U. S. Atty., for appellees.

HOFFMAN, District Judge. The docu-
mentary evidence produced from the archives
shows that in November, 1837, Jose F.
Armijo petitioned for the land claimed in
this case, and obtained from M. G. Vallejo,
director of colonization and military com-
mandant of the district, permission to oc-
cupy it. On the twenty-eighth of February,
1840, he presented his petition to the gov-
ernor, reciting the previous proceedings and
soliciting a final grant. This petition was
referred to the prefect of the district, and a
favorable informe returned. On the third of

---

[1] [Reported by Hon. William Cranch, Chief
Judge.]

[1] [Reported by Numa Hubert, Esq.]
[2] [Affirmed by supreme court, sub nom. U.
S. v. Armijo, 5 Wall. (72 U. S.) 444.]

March, 1840, a grant in the usual form was issued by Governor Alvarado. The original grant delivered to the party is produced by him and its genuineness proved. The authenticity of the papers produced from the archives is not disputed, nor is the bona fides of the grant questioned. It also appears that from a period shortly subsequent to the grant, the grantee took possession of his land, built a house upon and stocked it with cattle. From that time to the present the rancho has been in possession of Armijo and his heirs.

Some doubt is raised as to whether the house built by Armijo was within the boundaries of the land granted to him, or within those of the adjoining rancho of Gen. Vallejo. It is evident, however, that Armijo occupied the land, claiming it to be his under his grant; that he continued to assert his title from the date of his grant until his death, and that his representatives were found by the United States, at the conquest, living on the land and claiming to own it. It is clear, therefore, that Armijo never abandoned his rights, and the case has no analogy to that indicated by the supreme court as amounting to an equitable forfeiture of the rights acquired by the grant, viz.: an abandonment of the grant during the existence of the former government, and an attempt to resume it from its enhanced value. The land is described in the grant as known by the name of "Tolenas," and bounded by the Arroyo of Suisun, the Estero of Julpinas, the Arroyo of Ololatos, and the Sierra. The fourth condition describes it as of three leagues in extent, as shown by the map in the expediente. The surplus is reserved in the usual form. The exterior boundaries are shown to embrace a tract considerably larger than the quantity mentioned in the condition. Any objection to the grant on this account is disposed of by the supreme court in the Case of Fremont, [17 How. (58 U. S.) 542.] The claimants are therefore entitled to a decree of confirmation to three leagues of land, to be located within the exterior limits mentioned in the grant, and in the form and divisions prescribed by law for surveys of lands in California, and in one entire tract.

[NOTE. On appeal to the supreme court, this decree was duly affirmed. Mr. Justice Field, in delivering the opinion of the court, held that, the grant being of a specific quantity within more extensive limits, there is no obligation to allow the quantity to be selected in accordance with the grantee's wishes, and that the latter's right of selection is only a privilege given by the generosity of the government. Continuing, the learned justice said: "The alleged priority of occupation and settlement consists in the fact that Armijo, after obtaining his grant, built a house upon a portion of the land included in the patent to Ritchie, and occupied it. But this fact is met by the further fact that the erection of the house gave rise to a suit between the owners of the two grants as to the boundary between them, which finally led to an arbitration of the matter. The award, as we construe it, fixed the Sierra Madre as the common boundary

of their respective claims. The patent of the Suisun tract does not embrace any land situated on the Armijo side of this boundary, and cannot, therefore, be justly a ground of objection by the claimants under the Armijo title. The objection that the survey does not locate the land in a compact form cannot be sustained. Compactness of form must depend, in many instances, upon a variety of circumstances: such as the character of the country, its division into different parcels by mountains, rivers, and lakes, and sometimes by the relation of the tract to neighboring grants. In this case, the Tolenas tract is surrounded by three grants, confirmed, surveyed, and patented. The survey is made so as to avoid collision with any of the elder patents, and, under these circumstances, is in reasonable conformity with the decree of confirmation,—the only conformity which the law requires." U. S. v. Armijo, 5 Wall. (72 U. S.) 444.]